St. Louis & San Francisco Railroad Company *v.* Keathley.

## Opinion delivered June 12, 1916.

Master and servant—injury to servant—railroads—appliances—evidence of custom of other roads.—Plaintiff, a locomotive fireman, was injured when his fuel shovel struck a hole in the floor of the tender, which hole was used to let the coupling pin of the draw-bar pass through, *Held,* it was error to exclude evidence of the custom of defendant and other railroads, to permit the placing of such holes in the floor of the tender.

Appeal from Lawrence Circuit Court, Eastern District, *Dene H. Coleman,* Judge; reversed.

*W. F. Evans* and *W. J. Orr,* for appellant.

1.  Testimony as to the custom on other railroads was admissible. 105 Ark. 392; 20 Atl. 517; 57 Ark. 76; 20 S. W. 808; 122 U. S. 194 and 200 other cases.

2.  There was a total failure of proof to show any negligence.

3.  Instruction No. 3 for plaintiff as to the duty of the company to provide "*a safe shovel board*" was error. No such duty rests even upon carriers of passengers. Absolute safety is unattainable. 105 Ark. 205; 80 *Id.* 68; 92 *Id.* 143, and cases *supra.*

*W. P. Smith* and *G. M. Gibson,* for appellee.

1.  There was no error in excluding the testimony as to the custom of other railroads. The testimony was not admissible. But the company was allowed to introduce evidence as to the use of like tenders on its own road and this obviated any error or prejudice. The testimony really was immaterial, but appellant failed to move to exclude this testimony.

2.  It is true, the master is under no obligation to furnish the safest or most modern appliances; that he is not an insurer, but here the attention was called to the defect and there was a promise to repair.

3.  Under the proof there was no assumption of risk and there is no error in the instructions. 87 Ark. 396; 112 S. W. 886. There is no prejudicial error.

McCulloch, C. J. The plaintiff, L. Keathley, worked for the defendant railroad company as fireman, and while in the discharge of his duties received injuries for which he seeks, in this action, to recover compensation. He was fireman on an engine hauling a through freight train from St. Louis to Chaffee, Missouri, and the injury occurred on July 12, 1912, at or near St. Genevieve, Missouri. Plaintiff was engaged in shoveling coal from the tender into the fire box of the engine, when the

shovel he was handling struck the edge of a hole in the metal sheet which constituted the floor of the tender and he was thrown down and his wrist was broken in the fall.

The charge of negligence is not very specifically set out in the complaint, it being alleged only in general terms that the shovel which plaintiff used was obstructed "in a large hole about seven inches in diameter in the shoveling sheet"; that it was "necessary to use considerable force in operating the shovel, and it was customary and proper for the shovel to slide along the surface of the shoveling sheet without obstruction;" and that the defendant "knew of the defective condition of the shoveling sheet, or could have known thereof by the proper inspection, but that the same was covered with coal at the time this plaintiff was injured and on that account he had no knowledge of such defective condition of said shoveling sheet."

In the trial of the case the plaintiff undertook to specify the acts of negligence by showing that the hole was too large, and that it was unnecessary to have any hole at all in the floor of the tender. He testified, also, that on account of the hole being too large the edges of it had become battered and that this was what obstructed the free passage of the shovel. Plaintiff himself testified that the proper method of constructing a floor of a tender was to cover the hole with a metal false sheet, or that in the event of there being a hole left there it ought not to be over four inches square, whereas the hole in this tender was, according to his testimony, about seven inches in size. Plaintiff referred to the metal flooring as the "shoveling sheet," and explained that it was necessary to have a smooth surface so that the shovel could be shoved along the floor until it reached the fire box of the engine.

It appears from the testimony that the reason there is a hole left in the floor is to allow the coupling pin of the draw-bar to pass through. The testimony adduced by the defendant tends to show that this is a common device on engines and it is the customary method of con-

structing them.   The evidence was that there has to be
an opening for the coupling pin to drop through, and
that the pin must be left accessible so that it may be
drawn out when the engine and tender are disconnected.
Also that it is necessary to draw the pin out occasion-
ally in making inspections.   The testimony adduced by
defendant shows that this hole was about the customary
size, and that the engines with this device were common-
ly in use, not only on defendant's railroad but other rail-
road systems of the country.   At least, defendant offered
the testimony to that effect, but the court excluded it so
far as it related to custom on other lines of railroad.
That is one of the errors assigned, and we are of the
opinion that it is well taken.

In the case of *Oak Leaf Mill Co.* v. *Littleton,* 105
Ark. 392, after reviewing the authorities on the subject,
we adopted the following rule: ''What was the custom
of others under like conditions and circumstances is evi-
dence of what a reasonably prudent man would ordina-
rily do, but it is not conclusive evidence of that fact.''
That statement of the law, as the correct rule of evidence,
was deduced from Professor Wigmore's discussion of
the subject which was quoted at length in the opinion just
referred to.   The decision of the court was directly in
conflict with that rule, and calls, we think, for a reversal
of the judgment in the present case.   There is a sharp con-
flict in the testimony of the witnesses, and it made a very
close question for the decision of the jury as to whether
or not the defendant was guilty of negligence in allowing
the metal floor of the tender to become thus obstructed,
or whether it in fact constituted an obstruction.

There was, it is true, testimony that the edges of
the hole had become battered or frazzled, and this tes-
timony alone might have authorized the jury in reaching
the conclusion that there was negligence on the part of
the company, but the plaintiff's testimony was that the
alleged battered condition of the edges of the hole re-
sulted from the hole being too large, and the substance
of his testimony was to make the size of the hole the

primary charge of negligence. So if the jury had been permitted to consider evidence which might have convinced them that there was no negligence in making the hole too large, the jury could have found that there was no negligence on the part of the company even though the edges of the hole had become to some extent battered and rough. It does not answer the contention, therefore, to say that they might have based their verdict entirely upon the evidence showing that the edges of the hole were battered, or that they found that that alone constituted negligence of the company.

The court permitted defendant's witnesses to testify concerning the use of tenders with this device on its own road, and the size of the holes in such tenders, but that did not obviate the prejudice which resulted from refusing to allow proof showing what the custom was on other roads. Without the excluded testimony, the jury may have found that it was negligence to leave a hole of that size in the floor of the tender, but if they had been permitted to consider the fact that that was the custom on many of the great railroad systems of the country they might have concluded that it did not constitute negligence to leave a hole of that size. In other words, the jury might have adopted the general standard as the correct measure of what a reasonably prudent man would do under those circumstances.

We do not deem it necessary to discuss the case any further. The evidence was sufficient to sustain the verdict, and there was no prejudicial error in the instructions of the court nor in its rulings on the introduction of evidence other than in the respect already mentioned. One of the instructions (No. 3) is technically incorrect in stating the degree of care which the employer should observe, but there was no specific objection to the defect. We merely call attention to it now so that it will not be repeated in the next trial.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.